**Donald W. HOOKOM, Jr., et al., Plaintiffs,**

v.

**Harold SENSOR, et al., Defendants.**

**Civ. No. C–1–87–0129.**

United States District Court, S.D. Ohio, W.D.

July 27, 1988.

Joseph Jordan, Cincinnati, Ohio, for plaintiffs.

James Wiggin, III, Cincinnati, Ohio, for defendants.

ORDER

CARL B. RUBIN, Chief Judge.

This matter is before the Court on the application of Defendant Jack Eldredge for sanctions pursuant to Rule 11, Fed.R.Civ.P. (doc. 50). A hearing was held on June 10, 1988 and counsel have submitted memoranda. In addition to the foregoing the Court requested that the court reporter transcribe testimony of Plaintiff Donald Hookom and Defendant Jack Eldredge presented to the Court at the hearing of this matter on its merits in February, 1988. There has been filed as documents in this case such transcripts and identified as documents 61, 62 and 63 [1].

1. Through inadvertence the above documents were not filed in the same order as the testimony. For the chronological order of testimony

This matter began on February 24, 1987, when Plaintiff Donald W. Hookom, Jr. filed a complaint against five defendants: Harold Sensor, Myra D. Perry, John G. Eldredge, Resort Communities of America, Inc., and America Vacations, Inc. Plaintiff asserted twelve causes of action including breach of contract, violations of Federal Securities Acts, State Securities Laws, Common Law Fraud, RICO, Negligence, etc.

By the time this matter reached trial on February 8, 1988, Defendants Resort Communities of America, Inc. and American Vacations, Inc. had been dismissed. On the morning of trial, Plaintiff dismissed all causes of action other than violations of Federal Securities Law and Common Law Fraud. At the end of Plaintiff's case, Defendant Myra D. Perry was dismissed and Plaintiff was directed to pay expenses of Ms. Perry in the sum of $500.00. Defendant John Eldredge sought a directed verdict at the end of the Plaintiff's case which was denied. Defendant Harold Sensor made no appearance. The jury returned a verdict against Mr. Sensor, but in favor of Mr. Eldredge.

The disposition of any Rule 11 motion requires not only a careful consideration of the facts, but also a consideration of certain legal principles that underlie Rule 11. It should be noted at the outset that the "English Rule" of charging attorney fees to the unsuccessful party has never been adopted in the United States and Rule 11 may not be expanded to become a disguised adoption of such rule[2].

Rule 11 is intended to protect defendants from meritless and harassing law suits without inhibiting plaintiffs from bringing legal actions that appear to be meritorious in the first instance. A strict construction of Rule 11 would require that the filing of a complaint alone triggers the mandatory sanctions of such rule if the plaintiff is not successful[3]. Such strict interpretation would be unduly harsh. No litigant should be faced with sanctions without an opportunity to conduct appropriate discovery. It is not the filing of the complaint, but rather the persistence in a meritless claim after appropriate discovery that should be the practice to be curbed.

The Federal Rules of Civil Procedure are based upon notice pleading and liberal discovery. Under those Rules it is intended that a litigant determine promptly the strengths and weaknesses of his case. A failure to conduct discovery or the conducting of inadequate discovery is not a defense to Rule 11 sanctions. *See INVST Financial Group v. Chem–Nuclear Systems,* 815 F.2d 391 (6th Cir.1987); *Albright v. Upjohn Co.,* 788 F.2d 1217 (6th Cir.1986).

The test is not necessarily who wins in court. If that were to be the sole test, then the English Rule has in effect been adopted. The burden of balancing the conflicting societal interests of encouraging the meritorious case while punishing the meritless falls upon the trial court. Unfortunately, the standard to be used has not yet been specifically described. To this Court's knowledge there is no guidance from the United States Court of Appeals for the Sixth Circuit as to the appropriate standard. The standard cannot be "preponderance of the evidence." That would subject every unsuccessful litigant to attorney fees and would once again lead back to the English Rule.

The only lesser standard available is that of "probable cause." Currently there is no authority for the use of such a standard and indeed the term "probable cause" may

---

the documents must be read in the following order: doc. 61, 63, 62.

**2.** The "American Rule" of never charging attorney fees to the unsuccessful party has been undercut in some situations, i.e. civil rights proceedings under 42 U.S.C. § 1981 *et seq.,* and where there have been proceedings in bad faith, *see Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

**3.** The signature of an attorney or party constitutes a certificate by the signer ... that to the best of the signer's knowledge, information and belief formed after reasonable inquiry, it is well-grounded in fact and is warranted by existing law ... If a pleading, motion, or other paper is signed in violation of this rule, the Court ... *shall* impose upon the person who signed it ... an appropriate sanction. (emphasis added) Rule 11, Fed.R.Civ.P.

be inapplicable to a civil matter. It is, however, as conceptually close to a definable standard as this Court can find.

This Court proposes therefore to examine in terms of "probable cause" the evidence of Plaintiff against Defendant Jack Eldredge in this matter. The transcripts of testimony previously referred to disclose the following.

It is undisputed that in the Spring of 1986 Plaintiff Donald Hookom, Jr. was defrauded by Defendant Harold Sensor in the approximate sum of $80,000.00. Mr. Sensor made no appearance in this case, did not appear at trial, and is probably judgment proof. The evidence in this case indicates that Defendant Eldredge sold "time shares" in a Florida condominium to the Plaintiff in February, 1986 [4]. During that time he met the Plaintiff twice for cocktails and also referred him to a realtor since Plaintiff was likewise seeking to purchase a retirement home. Plaintiff also advised Mr. Eldredge that he would be returning to Florida in March, 1986 (doc. 61, pp. 1—8).

Plaintiff returned to Florida in early March, 1986. He met with Eldredge to make the final payment on the time share condominium. On Monday, March 10, 1986, Defendant Eldredge introduced the Plaintiff to Defendant Harold Sensor [5] and the three individuals met on that day for lunch. At the luncheon Sensor described an investment in golf carts which required $13,000.00. Mr. Eldredge agreed to contribute $5,000 and Mr. Hookom committed himself to $8,000.00 (doc. 61, pp. 8–10 and 29).

Mr. Hookom paid $8,000.00 to Sensor on March 12, 1986 and on March 20, 1986 made another investment of $13,000.00. Mr. Eldredge apparently neither participated in the second investment, nor had any contact either with Mr. Hookom or Mr. Sensor in that regard (doc. 61, p. 10).

There were social contacts between Mr. Hookom and Mr. Eldredge thereafter, discussions of other joint investments, and an agreement by Eldredge to rent the retirement home purchased by Hookom (doc. 61, pp. 22, 23).

Mr. Hookom returned for a third trip to Florida on April 8, 1986 and returned to Cincinnati on April 13, 1986. No investment was made with Mr. Sensor during the third trip (doc. 61, p. 12). On that trip, however, Mr. Hookom was the guest of Harold Sensor and Myra Perry [6].

Mr. Hookom made a third investment with Harold Sensor on April 14, 1986 for $11,000.00 and an investment on April 16, 1986 of $23,000.00. On April 22, 1986 he invested $18,500.00, on April 23, 1986 he invested $8,200.00, and on April 25, 1986, he invested $3,500.00. There is no evidence that Eldredge participated in any of these investments. All of the investments of Plaintiff Hookom and the investment of Defendant Eldredge were short term. They came due in April and late in the month Defendant Sensor asked Plaintiff Hookom to "roll over" his first two investments, including the profit thereon (doc. 61, pp. 15, 16). By the end of April, therefore, Plaintiff Hookom had invested $85,200.00 with Sensor as well as two other subsequent investments, amount unknown. (doc. 61, p. 16).

Late in April, approximately April 20—24, 1986, Plaintiff Hookom learned that Defendant Eldredge had recovered his money from the original investment, together with interest thereon. Hookom's investments on and after that approximate date amounted to $32,200.00. (doc. 63, p. 45).

Near the end of May Defendant Eldredge advised Hookom that he thought Sensor was a crook. (doc. 63, pp. 43, 44). Apparently thereafter Plaintiff made no further investments with Sensor.

---

**4.** The term "time share" refers to a right to occupy premises at a specific time. Such shares are usually sold in weekly increments.

**5.** There is reason to believe that Sensor called Hookom prior to the second visit to Florida. (See Doc. 61, p. 9, Lines 6–7).

**6.** As previously noted, Myra Perry was likewise a defendant in this case. She appeared pro se and was dismissed at the end of Plaintiff's case for lack of any evidence of participation in the fraud.

Defendant Eldredge's only other connection with Defendant Sensor involved his selling from approximately the end of March, 1986, to the end of April, 1986, of reconditioned golf carts on commission. The evidence indicated that he was unsuccessful in selling any of such golf carts and that his total income was $150.00 for a reconditioning job on a cart already sold. Mr. Eldredge received his investment money back on April 16th. (doc. 62, pp. 76, 77, 78).

Defendant Eldredge testified that he had advised Mr. Hookom in April that he had not seen any purchase orders and that he would not roll over his money and that he advised him to look at the purchase orders before he (Hookom) did. If Defendant Eldredge's testimony is accurate, this conversation occurred either prior to April 8th or subsequent to April 13th (doc. 62, p. 83).

It should be noted that none of the foregoing testimony came as any surprise to the Plaintiff Hookom. During discovery prior to trial, Mr. Eldredge's deposition was taken. (doc. 63, p. 97). No evidence was presented of any material deviation from that deposition.

The foregoing detailed analysis of the testimony of both Mr. Hookom and Mr. Eldredge discloses that at most Mr. Eldredge was essentially a bystander and neither responsible for Mr. Hookom's investments, nor for the fraud that resulted. This observation is consistent with the decision of the jury, but it is more than a finding that "reasonable minds might reasonably differ." Nothing in the evidence indicated any participation and more significantly, nothing in the evidence presented was a surprise or unexpected by the Plaintiff. While it is not pertinent to a decision in this matter, the Court does note in passing that Plaintiff Hookom sought also to impose liability upon Defendant Myra Perry. The totality of Ms. Perry's participation apparently was to be Mr. Sensor's mistress and perhaps serve the Plaintiff coffee at a place known as "The Longboat Bay Club." (doc. 61, pp. 13, 14, 15). The inclusion of Ms. Perry bears upon the insistence of Plaintiff to sue any individual present at the time of the transactions with Mr. Sensor.

The Court returns to a consideration of a defendant's side of the balance. A defendant should not be harassed. The task imposed upon a trial judge is extremely difficult when determining what is "harassment." To a defendant, "harassment" is far different in concept than it is to a plaintiff. Indeed the best description of the task may be found in *Westmoreland v. CBS*, 770 F.2d 1168, 1174 (D.C.Cir.1985). Circuit Judge McKinnon speaking for the United States Court of Appeals for the District of Columbia Circuit made the following observation: "In determining whether factual, dilatory or bad faith reasons exist which may give rise to invocation of Rule 11 sanctions, the District Court is accorded wide discretion for the *District Court has tasted the flavor of the litigation* and is in the best position to make these kinds of determinations." (emphasis added).

The "flavor of this litigation" as it relates to Mr. Eldredge does not favor the Plaintiff. There is reason to believe that Plaintiff who suffered a real loss could not recover against the most culpable defendant, but attempted instead to recover against peripheral persons. His loss was real, but so is the loss of Mr. Eldredge who was required to hire attorneys, attend trial, and suffer the stress and fear that always accompanies an appearance in Federal Court.

The "flavor" of this case also includes a disturbing statement in Plaintiff's memorandum (doc. no. 53) that may be indicative of his attitude toward Defendant Eldredge. On page seven the following appears: "what costs Eldredge incurred were the result of his own defense strategy and his resistance to consideration of settlement. By pursuing a more business-like strategy, even the corporate defendants reached agreement leading to their dismissal after only nominal litigation costs." What Plaintiff appears to be saying is that a person who legitimately defends himself against a meritless claim is at fault for incurring the expenses of defense and cannot look to the

plaintiff for relief. This Court is unaware of any such concept in law.

The Court determines therefore in accordance with the foregoing that Donald Hookom, Jr. should not be penalized for bringing suit against Jack Eldredge, nor penalized for reasonable discovery, but based upon the evidence presented should be penalized for activity beyond that point. Defendant's motion for an award of attorney fees and costs as a sanction for violation of Rule 11, Fed.R.Civ.P., is hereby granted to the extent of $500.00 per day for two and one-half attendance days in the courtroom and for $1,000.00 for the preparation and presentation of the Motion to Impose Sanctions, for a total of $2250.00.

IT IS SO ORDERED.